Michael A. Telesca, J.
Bertram Wilkinson died on October 10,1970, leaving a will providing that, after the payment of two bequests of $2,000 each, the residue of his estate would pass to his wife, Leonora E. Wilkinson, who survived him. The will appointed William E. Gelb, executor, and letters testamentary were duly issued to Mr. Gelb upon probate on January 26, 1971. The assets of the estate consisted of three bank accounts and a brokerage cash account totaling $23,772.54, and a promissory note in the face amount of $25,000 owed to the decedent by his stepson, Kenneth Jamieson.
As nominated executor and attorney for the estate, Mr. Gelb propounded the will for probate; handled the New York State estate tax proceedings; prepared and rendered to the Surrogate’s Court his final account. In addition to these conventional activities, Mr. Gelb, as attorney for the estate, brought a legal action to recover on the promissory note which led to a settlement in the amount of $20,500. After discussion with the then Surrogate, Hon. Michael L. Rogebs, Mr. Gelb requested an additional fee of $4,100 for settling the action on the note, over and above the statutory executor’s commissions of $1,738, and the fee for his services to the estate of $1,989. The decedent’s widow objected to the legal fees charged for settling the action on the note, claiming it to be excessive. However, she made no objection as to the amount of the executor’s commissions allowed and the legal fee fixed for general estate matters.
A hearing was held and testimony taken, and the Hon. Michael L. Rogebs, found that the requested fee, being 20% of the *832 - amount collected on the note, was fair and reasonable and he directed payment of that fee. An appeal to the Fourth Department with respect to the fee of $4,100 for the litigation and settlement of the claim, led to a remand to this court to determine the 'fee for Mr. Gelb (for settling the claim only) on the basis of quantum meruit.
The testimony of Mr. Gelb indicated that, besides the conventional administration of decedent’s estate, a difficult collection matter was presented, in which he was required to convert the note of Kenneth Jamieson into cash for distribution to the estate’s residuary beneficiary. For that collection, he sought $4,100 in respect of which on September 10, 1973, he testified as follows: “ I claimed by reason of the fact that I had to sue the note, which if I turned the note over to her, she would have had to have some attorney to sue it and attempt to collect it, and I am sure that any other attorney would have charged considerably more than $4,100.00 to collect a $20,500.00 amount. I thought it was a very reasonable fee. ’ ’
Even before decedent’s death, attorney Gelb foresaw difficulties surrounding the collection of the sum representing decedent’s loan to his stepson, and were it not for his diligent efforts at that time to secure a note, there would have been no claim which could have been successfully prosecuted for any sum against the son. There was also the very real concern that the stepson would challenge the probate of the will, seeking to set up a former will which, by its terms, forgave and thereby invalidated the note.
These matters being resolved when the will was admitted to probate, the attorney’s skill was then tested in seeking recovery from the stepson who had a good job and terrible credit rating. Following the probate of the propounded will, and failing collection on the note by demand, attorney Gelb prepared a summons and complaint, had it served, with some difficulty, on the stepson, and secured a default judgment.
Thereafter, nearly a full day was spent by the attorney in legal research to discover whether the transfer of a piece of realty by the stepson could be set aside, or a lien impressed upon the proceeds. After hearing that the stepson might own a farm in the adjoining County of Ontario, the attorney prepared and filed a transcript of judgment there and spent a whole day searching the records in that county, to discover whether such property existed.
It appeared that the estate had a judgment against a judgment-proof debtor, but as attorney Gelb began to attempt to *833 serve the stepson with an order for examination supplemental to judgment, he then received settlement overtures through the stepson’s counsel.. Tough-nosed and earnest negotiations ensued, wherein attorney Gelb, step by step, increased both his demands and the risk involved, seeking to obtain the maximum possible sum for the estate. Financing the settlement payment was to be through a loan from the stepson’s employer, a most unusual means of obtaining funds, which substantially increased the risk that negotiations would founder. Finally, attorney Gelb had Mrs. Wilkinson write him a letter saying that she would take no less than $20,500, and settlement was eventually reached at this figure. This accomplished, attorney Gelb succeeded in convincing the Sheriff’s office to waive the poundage fees for the income execution, at a savings to the estate of close to $1,000.
As attorney Gelb testified, had he, as executor, delivered the uncollected note to Mrs. Wilkinson in completing the estate administration, she would almost certainly have found it necessary to seek separate counsel to collect thereon. In fact, even he had the right to engage separate counsel to collect the note at a customary fee of 25% to 33%% of the amount collected. The testimony of expert witnesses, both attorneys of long experience in the field of collection work, indicated that the fee of an attorney in a collection matter such as this would undoubtedly, have been higher than that as determined by the Surrogate in this proceeding.
The law is certain that the Surrogate need give little weight to the testimony of experts concerning the settling of fees, as that function is particularly within his expertise and discretion and the court itself is the expert in such matters. (Matter of Kentana, 170 Misc. 663; McAvoy v. Harron, 26 A D 2d 452.) Here the experienced Surrogate considered both the request of the executor attorney and the testimony of the expert witnesses in the field of collection law before confirming the fee which he had previously set. It is settled law that an attorney who renders service to a client under circumstances which support an implied agreement, where no express agreement exists concerning fees, is entitled to recover on the quantum meruit basis for the reasonable value of the services so performed. (3 N. Y. Jur., Attorney and Client, § 102.)
The direction of the Appellate Division was for this court to determine Mr. Gelb’s fee on a quantum meruit basis. Implicit in that direction is the obligation to evaluate the amount of time and effort expended, obtain a sufficient description of *834 services, and finally, make a determination of the customary fair and reasonable charge for said services in the legal community. The measure of success obtained is also to be considered.
The collection of an estate asset by the attorney fiduciary, regardless of the difficulty involved, warrants a fee based on all factors, including the allowances previously made and attaching to other duties performed by the attorney in different capacities.
While there exists no legal prohibition to an attorney serving as executor and also as attorney for the estate, additional compensation for litigated matters involving marshalling of assets is considered as having been partially compensated for in the executor’s commissions provided by statute and the legal fee allowed for general estate concerns and duties. An individual, because of long-standing relationship with his attorney, and because of a special trust and confidence in him, might very well, and in many cases does, select his attorney to serve as executor and so nominates him in his will. In fact, that situation benefited the estate in this instance, because of the personal knowledge of the deceased’s circumstances known only to attorney Gelb.
Nonetheless, there are limits to the total burden which the estate should bear, regardless of the extensive services rendered. That limit bears directly on the size of the estate and compensation allowed in the various capacities in which the attorney has served the estate. This is not to say that the attorney charged excessive amounts in this case. Standing alone, a 20% fee based upon the net recovery in a difficult collection matter is not excessive, and in my view was reasonable. It should be emphasized that the matter of services on the note in the present case extended from before probate throughout the administration of this estate until final payment thereon, consuming a great many hours and days of negotiation, legal and factual research and preparation of papers.
Accordingly, I fix and determine the amount of legal fee concerning the collection of the note, to be $2,500, said determination having been made on the basis of quantum meruit.